RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0138p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

           *Plaintiff-Appellee,*

    *v.*

JAMES RANDY CHRISWELL,

           *Defendant-Appellant.*

> No. 04-5020

---

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 03-00025—Charles R. Simpson III, District Judge.

Argued: December 7, 2004

Decided and Filed: March 18, 2005

Before: GIBBONS and ROGERS, Circuit Judges; BELL, Chief District Judge.[*]

---

## COUNSEL

**ARGUED:** Patrick J. Bouldin, WESTERN KENTUCKY FEDERAL COMMUNITY DEFENDER, INC., Louisville, Kentucky, for Appellant. Marisa J. Ford, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Scott T. Wendelsdorf, WESTERN KENTUCKY FEDERAL COMMUNITY DEFENDER, INC., Louisville, Kentucky, for Appellant. Marisa J. Ford, Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

---

## OPINION

---

JULIA SMITH GIBBONS, Circuit Judge. Defendant James Randy Chriswell was convicted by a jury after a two-day trial of one count of attempt via the internet to persuade, induce, entice and coerce a minor to engage in sexual activity and one count of traveling in interstate commerce for the purpose of engaging in sexual activity with a minor, in violation of 18 U.S.C. §§ 2422(b) and 2423(b). The district court imposed a two level enhancement to Chriswell's sentence pursuant to United States Sentencing Guideline (U.S.S.G.) § 2A3.2(b)(2)(B)(2003) for unduly influencing the victim, an undercover FBI agent, to engage in prohibited sexual conduct. Chriswell appeals the two level enhancement pursuant to § 2A3.2(b)(2)(B), arguing that (1) U.S.S.G. § 2A3.2(b)(2)(B) does

---

[*]The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

not apply to either attempted acts of criminal sexual abuse with a minor or cases involving undercover law enforcement officers representing themselves to be underage children, and (2) assuming that U.S.S.G. § 2A3.2(b)(2)(B) does apply, the district court erred in its application of the subsection in this case. Chriswell also argues that his case must be remanded for resentencing in light of the Supreme Court's opinion in *United States v. Booker*, 125 S. Ct. 738 (2005).

For the following reasons, we reverse the district court's imposition of the two level enhancement pursuant to U.S.S.G. § 2A3.2(b)(2)(B) and hold that this subsection is inapplicable to cases involving undercover law enforcement officers representing themselves to be children under the age of sixteen.

## I.

Special Agent Steven Parris is assigned to the Violent Crimes Cyber Squad with the Federal Bureau of Investigation ("FBI") in Louisville, Kentucky. Special Agent Parris had been involved in the FBI's Innocent Images Task Force since April 2001. The purpose of this task force is to "target on-line predators who are trying to solicit minors" to engage in sexual contact. For his work on the Innocent Images Task Force, Special Agent Parris assumed an undercover identity for his on-line interactions, utilizing the screen name "Christenky2006".[1] Christen's profile, which any Yahoo! user in a given chat room can access, stated that she was a fourteen year old single female student living in Louisville, Kentucky. The on-line profile did not include a picture of Christen. When Special Agent Parris conducted online investigations, he logged on to various chat rooms but waited for other individuals in the chat room to contact him via instant messaging.[2]

On December 17, 2002, Special Agent Parris used the screen name "Christenky2006" to log on to a Yahoo! chat room entitled "I Love Older Men." Once inside this chat room, Parris was contacted via instant messaging by an individual using the screen name "freebirdonly2000," later confirmed to be the screen name used by fifty-two year old Defendant Chriswell. After greeting "Christen," Chriswell asked, "are you really the age on your profile?" "Christen" confirmed that she was. Chriswell then asked for a picture, to which "Christen" responded that she did have a picture of herself, but she would not yet send it to Chriswell.[3] After "Christen" declined to send her picture, Chriswell inquired whether the fact that "Christen" was in the "I love older men" chat room was a result of her "weakness for older men," to which "Christen" responded, "I dunno about that." Chriswell asked "Christen" what she would do with an older man. When "Christen" responded that she did not know, and that she was "not very experienced," Chriswell asked whether "Christen" was a virgin. When "Christen" responded affirmatively, Chriswell said, "that is sweet nothing like a virgin [sic]." Before the conversation ended, Chriswell again asked for "Christen's" picture, and "Christen" again declined to send one.

Chriswell and "Christen" engaged in a total of sixteen conversations online between December 17, 2002 and February 17, 2003. Thirteen of the conversations were initiated by Chriswell, while three of the conversations were initiated by "Christen." During these

---

[1] The screen name is a combination of Special Agent Parris's on-line persona, "Christen," the state in which she lived, and the year that "Christen" would graduate from high school.

[2] While conversations in chat rooms are visible to the other individuals in the chat room, messages sent via instant messaging are private conversations, only accessible to the two participants.

[3] Special Agent Parris testified that the most frequent request he gets in the chat rooms when he is conducting an investigation is for a picture of "Christen." However, Parris explained that he does not send a picture upon an individual's request until the individual (1) has expressed some desire to engage in sexual activity with Parris's online persona, and (2) discusses with Parris the possibility of traveling to Kentucky to meet his online persona.

conversations, Chriswell and "Christen" discussed Chriswell's motorcycle, Chriswell's and "Christen's" pet dogs, and "Christen's" school. By and large, however, the conversations between Chriswell and "Christen" were explicit discussions about sex. Throughout the conversations, Special Agent Parris presented "Christen" as a relatively inexperienced teen who was mildly curious about sex. "Christen" generally appeared ambivalent about the often heavily sexual nature of the exchanges. Although "Christen" did not normally ask Chriswell to stop making such comments or to change the subject, she also did not participate in the exchange or contribute to the sexually explicit dialogue.

On January 29, 2003, during a conversation that Chriswell initiated with "Christen," Chriswell suggested that he come to Kentucky to meet "Christen." During the rest of the conversation and in the conversation taking place on the following day, Chriswell and "Christen" discussed where and when they could meet. They settled on meeting at the Oxmoor Mall on February 18, 2003, a day that "Christen" would have off from school. After these details were settled, Special Agent Parris sent Chriswell a photograph of "Christen" that matched the physical description that Parris had previously provided. In reality, the person depicted in the photograph was a twenty-eight year old detective with the Louisville Metro Police, Stacy Redmond.[4]

Both Chriswell and "Christen" described what they would be wearing and set the exact location in the mall where they would meet. Chriswell and "Christen" decided that they would see a movie, go shopping at Victoria's Secret, and get a hotel room where they could engage in sexual activity.

On February 18, Chriswell arrived at the Oxmoor Mall. He approached Detective Redmond, who was wearing clothing matching what "Christen" had described. Upon approaching Detective Redmond, Chriswell was arrested. The officers executing the arrest found a package of condoms on Chriswell's person and found the receipt for the condoms in Chriswell's car.

On March 3, 2003, a grand jury indicted Chriswell on one count of attempting to persuade a minor to engage in sexual activity using the internet in violation of 18 U.S.C. § 2422(b), and one count of traveling in interstate commerce for the purpose of engaging in sexual activity with a minor in violation of 18 U.S.C. § 2423(b). Chriswell entered a plea of not guilty. Chriswell's principal defense was that he believed that "Christen" was actually an eighteen year old adult who was role-playing. The jury convicted Chriswell on both counts following a two-day trial.

At the December 19, 2003 sentencing hearing, the government asked the district court to impose a two level sentence enhancement pursuant to U.S.S.G. § 2A3.2(b)(2)(B), which provides for an enhancement where "a participant . . . unduly influenced the victim to engage in prohibited sexual conduct." The government further asked that the court apply a rebuttable presumption of undue influence in this case, noting that § 2A3.2(b)(2)(B) provides for a rebuttable presumption of undue influence where there is an age difference of greater than ten years between the victim and the defendant. Because the defendant was fifty-two years old at the time of the offense, and Agent Parris represented "Christen" to be fourteen years of age, the government argued, the presumption of § 2A3.2(b)(2)(B) was applicable to Chriswell's sentence.

The district court determined that, contrary to existing authority in other district courts within this circuit, the sentence enhancement was available in cases involving undercover law enforcement agents posing as underage children. In so deciding, the district court relied on the reasoning of the Eleventh Circuit in *United States v. Root*, 296 F.3d 1222, 1223 (11th Cir. 2002), which held that § 2A3.2(b)(2)(B) could be applied in undercover sting operations. The district court noted that the

---

[4]Parris chose to send this picture because Redmond was youthful-looking and had consented to this use of her photograph. The FBI has a policy against sending pictures of actual minors.

definition of victim in the Sentencing Guidelines explicitly includes an undercover law enforcement agent representing himself to be under the age of sixteen. Departing from the *Root* analysis, however, the district court found that in a case involving an undercover agent, the rebuttable presumption where there is at least a ten year age difference did not apply. The court reasoned that in cases where there is no actual victim, it is unfair to place the burden to rebut a presumption of undue influence on the defendant. As a result, the district court ruled that the burden rested with the government to show that the two level enhancement pursuant to § 2A3.2(b)(2)(B) applied.

The court then determined that a two level enhancement pursuant to § 2A3.2(b)(2)(B) was warranted in this case. The court held that, pursuant to the reasoning in *Root*, in cases where there is no real victim, the court should focus on the defendant's conduct, and specifically whether the defendant employed an abuse of superior knowledge, influence, or resources. The court found that there were some indications of abuse of superior resources in the instant case. In determining that the two level enhancement should apply, however, the court primarily focused on the numerous instances in the record where Chriswell portrayed himself "as a sexual expert and sexual teacher." The court noted that the trial record in this case was replete with examples of Chriswell's lording his superior sexual knowledge over "Christen" as well as Chriswell's assumption of the role of sexual guide and mentor. The court found that these many references constituted an abuse of superior knowledge and influence, two of the three factors employed in the *Root* decision in determining that § 2A3.2(b)(2)(B) should apply in a given situation. Therefore, the district court concluded that it was appropriate to apply the two level sentence enhancement, placing Chriswell in the total offense level category of twenty-five and the criminal history category of one, mandating a sentence range of fifty-seven to seventy-one months. The judge ultimately sentenced Chriswell to sixty months imprisonment. The defendant filed a timely appeal to this court on December 23, 2003.

## II.

Since the time that briefs were submitted and oral argument was heard in this case, the Supreme Court issued its opinion in *United States v. Booker*, 125 S. Ct. 738 (2005). The Supreme Court in *Booker* severed the statutory provisions which made the Sentencing Guidelines mandatory in nature, *id.* at 764, thus rendering the Guidelines "effectively advisory." *Id.* at 757. However, 18 U.S.C. § 3553(a) remains in effect and binding on federal courts, which "requires judges to take account of the Guidelines together with other sentencing goals." *Id.* at 764. Thus, the proper interpretation of the various provisions of the Sentencing Guidelines remains vitally important for this court. This court must review the district court's statutory construction and interpretation of the now-advisory sentencing guidelines *de novo*. *See United States v. Bazel*, 80 F.3d 1140, 1141 (6th Cir. 1996).

Whether the two point enhancement pursuant to U.S.S.G. § 2A3.2(b)(2)(B) for unduly influencing a victim to engage in sexual activity is available in cases of attempt or in cases where the "victim" is, in reality, an undercover agent posing as an underage child are questions of first impression in this circuit. In fact, the applicability of this enhancement to similar factual situations has been ruled on by the Seventh and Eleventh Circuits alone, with conflicting results. *Compare United States v. Mitchell*, 353 F.3d 552, 554 (7th Cir. 2003) *with Root*, 296 F.3d at 1223. Because there is no binding precedent to aid our interpretation of § 2A3.2(b)(2)(B), our inquiry must necessarily begin with an examination of the plain language contained in the Guidelines themselves. *See United States v. Cobb*, 250 F.3d 346, 349 (6th Cir. 2001). This court should also treat the commentary to the Guidelines as authoritative. *Stinson v. United States*, 508 U.S. 36, 38 (1993).

**A.**

Section 2A3.2 of the Sentencing Guidelines applies to instances of attempted as well as completed acts of criminal sexual abuse of a minor under sixteen years of age. Subsection (b) provides that increases or decreases in the base offense level are warranted where certain additional factors are present. U.S.S.G. § 2A3.2(b). In subsection (b)(1), a two level enhancement is provided where "the victim was in the custody, care, or supervisory control of the defendant." *Id.* § 2A3.2(b)(1)(2003). However, where that subsection does not apply, § 2A3.2(b)(2)(B) of the Guidelines provides for a two level enhancement to the base level offense where "a participant otherwise unduly influenced the victim to engage in prohibited sexual conduct." *Id.* § 2A3.2(b)(2)(B)(2003).[5] This enhancement was added to the Guidelines in 2000 to capture those cases where "coercion, enticement, or other forms of undue influence by the defendant . . . compromised the voluntariness of the victim's behavior and, accordingly, increased the defendant's culpability for the crime." *Id.* § 2A3.2, 2000 comments, background.

"Victim" is specifically defined by the comments to § 2A3.2 as either "an individual who . . . has not attained the age of 16 years" or "an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 16 years." *Id.,* application note 1.[6] The second version of the definition of victim was added in 2000 "to ensure that offenders who are apprehended in an undercover operation are appropriately punished." *Id.,* 2000 comments, background.

The application notes relating specifically to § 2A3.2(b)(2)(B) counsel that in deciding whether the subsection applies, "the court should closely consider the facts of the case to determine whether a participant's influence over the victim compromised the voluntariness of the victim's behavior." *Id.*, application note 4. The notes also provide that a rebuttable presumption applies where the defendant is at least ten years older than the victim. *Id.*

Even a cursory review of the above-quoted language of the Guidelines and the commentary reveals that the directives found within the Sentencing Guidelines conflict. An examination of the definition of "victim" provided in the Guidelines would likely lead one to conclude that all provisions in § 2A3.2, including subsection (b)(2)(B), apply not only to "real" victims, but also to undercover agents presenting themselves as underage children. However, the commentary language dealing specifically with subsection (b)(2)(B) directs a court to engage in a fact-intensive inquiry in order to determine whether the defendant's influence "*compromised the voluntariness* of the *victim's behavior*," indicating that the court's inquiry must focus on the defendant's effect on the victim. This language implies that this provision should not apply where the "victim" is an undercover agent, because there is no true victim upon whom the effect of the defendant's conduct can be measured.

The language of the Guidelines is likewise unclear as to whether to apply the two point enhancement pursuant to § 2A3.2(b)(2)(B) where the defendant is found guilty of an attempt, rather than a completed act, of criminal sexual abuse, such that no "prohibited sexual conduct" in fact has occurred. Section 2A3.2 covers both completed and attempted criminal sexual abuse. Thus, it

---

[5]U.S.S.G. § 2A3.2(b)(2) has recently been amended to provide for a four level enhancement.

[6]Effective November 1, 2004, U.S.S.G. § 2A3.2 was amended to replace the word "victim," as used in the Guideline, with the similarly defined word "minor." "Minor" is defined under the 2004 amendments as "(A) an individual who had not attained the age of 16 years; (B) an individual, whether fictitious or not, who a law enforcement officer represented to a participant (i) had not attained the age of 16 years, and (ii) could be provided for the purposes of engaging in sexually explicit conduct; or (C) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 16 years." Application note 1.

would seem appropriate to conclude that all subsections of § 2A3.2, including (b)(2)(B), should apply without regard to whether the crime is successfully completed. However, the specific language of the subsection requires that the defendant must have "unduly *influenced* the victim to engage in prohibited sexual conduct." *Id.* § 2A3.2(b)(2)(B) (emphasis added). The term "unduly influenced" is not explicitly defined in the Guidelines, rendering it unclear whether a completed act was contemplated by the drafters in employing the phrase. The use of the past tense may imply that completion of the act sought, i.e., the prohibited sexual conduct, is necessary in order to apply this subsection; such a reading would make this subsection inapplicable in any case involving an attempt. Further, such a reading would imply that the subsection would never apply where the case involved an undercover agent posing as a victim, as obviously in such a case, there will never be a completed act because there is no "real" victim, notwithstanding the fact that the definition of victim explicitly includes undercover agents.

## B.

That the language contained in the Guidelines points to conflicting readings is evidenced by the fact that the two circuit courts which have examined the application of § 2A3.2(b)(2)(B) to attempts and sting operations have reached directly contradictory results. The Eleventh Circuit in *Root*, 296 F.3d at 1232, held that § 2A3.2(b)(2)(B) applies to cases involving attempted criminal sexual abuse with an undercover agent posing as a child victim. In contrast, the Seventh Circuit decided in *Mitchell*, 353 F.3d at 554, that § 2A3.2(b)(2)(B) was inapplicable in cases involving undercover agents posing as victims. Although the court declined to decide definitively whether § 2A3.2(b)(2)(B) should apply in attempted cases of criminal sexual abuse involving an actual minor, the reasoning of the majority indicates that the court would not apply the enhancement to cases of attempt, regardless of whether the victim was an actual child or an undercover law enforcement officer. *Id.* at 559-60. Though these cases are not binding on this court, an examination of the arguments in each case, laying out the strongest reasons to adopt each interpretation, is highly instructive.

1. *United States v. Root*

The facts in *Root* are similar to the facts presented in the instant case.[7] Defendant Root was convicted on two counts pursuant to 18 U.S.C. §§ 2422(b) and 2423(b) and received a two level enhancement pursuant to U.S.S.G. § 2A3.2(b)(2)(B). *Root*, 296 F.3d at 1227. On appeal, Root argued that § 2A3.2(b)(2)(B) should not apply "because there was no real victim whose will was overborne." *Id.* at 1233.

The Eleventh Circuit, the first of any circuit to consider the question of whether the enhancement could apply in an undercover sting operation, ruled that § 2A3.2(b)(2)(B) does apply in cases where the "victim" is an undercover agent. *Id.* at 1232. In so deciding, the court noted first that the enhancements provided for in § 2A3.2(b) apply to both completed criminal acts and attempts. *Id.* The court further noted that the Guideline's definition of victim explicitly includes undercover law enforcement officers who have represented that they are under sixteen years of age. *Id.* The court decided that because the definition of victim in the Sentencing Guidelines was amended for the express purpose of ensuring that defendants apprehended through undercover sting operations are appropriately punished, the two level sentence enhancement pursuant to § 2A3.2(b)(2)(B) should apply to Root's sentence. *Id.* at 1234.

---

[7] An undercover agent using the screen name "Jenny30043" logged onto an AOL chat room entitled "I Love Older Men." *Root*, 296 F.3d at 1224. Defendant Root contacted "Jenny" through instant messaging, and the two engaged in sexually explicit conversations over the course of the next three days. *Id.* at 1224-26. On the fourth day after the initial instant messaging between "Jenny" and Root, Root traveled to a mall in Georgia to meet with "Jenny," where he was arrested by FBI agents. *Id.* at 1226.

Although the court noted that the comments to the Sentencing Guidelines explicitly direct courts to consider whether the defendant's conduct compromised the victim's will, the court found that such an inquiry was impossible in cases dealing with an undercover agent. *Id.* Therefore, the court held that the district court must focus instead on the offender's conduct in determining the applicability of § 2A3.2(b)(2)(B). *Id.* Though the court acknowledged that the effect on the victim would be "dispositive" in cases involving an actual underage victim, the court found that it would be "illogical" to interpret § 2A3.2(b)(2)(B) to require such an inquiry where an undercover agent was involved, as such a requirement would undercut the Guideline's purpose in amending the definition of victim to include undercover agents. *Id.* The court decided, therefore, that in focusing on the offender's conduct when evaluating the appropriateness of a two level enhancement pursuant to § 2A3.2(b)(2)(B), one must determine whether the defendant "displays an abuse of superior knowledge, influence and resources." *Id.* The court further determined that the rebuttable presumption of undue influence where the age difference between the victim and the defendant is greater than ten years should apply in cases involving undercover agents, and that the age disparity should be measured by the difference between the age the undercover officer claimed to be and the actual age of the defendant. *Id.* at 1234-35. The court found that Root had indeed acted to unduly influence the victim, because he had used superior knowledge, influence and resources in his online conversations with the undercover law enforcement officer. *Id.* at 1236. Therefore, the court found that the facts were sufficient to support a finding that § 2A3.2(b)(2)(B) applied. *Id.*

United States Circuit Judge Cornelia Kennedy, a member of this court sitting on the Eleventh Circuit by designation, dissented, arguing that § 2A3.2(b)(2)(B) should not apply where no criminal sexual activity, or at the very least, influence over an actual victim, has taken place. *Id.* (Kennedy, J., dissenting). Judge Kennedy focused on the fact that the comments direct the court to "closely consider" whether the voluntariness of the victim's behavior was compromised, an inquiry that was impossible to engage in without the accomplishment of the illegal act. *Id.* at 1236-37 (Kennedy, J., dissenting).[8]

### 2. *United States v. Mitchell*

As in *Root,* the facts in *Mitchell* are also very similar to those in the instant case.[9] *Mitchell*, 353 F.3d at 555. Defendant Mitchell pled guilty to a violation of 18 U.S.C. § 2423(b). *Id.* The presentence investigation report recommended that a two level enhancement be applied to Mitchell's sentence pursuant to § 2A3.2(b)(2)(B) based on the notion that Mitchell had unduly influenced the victim, and the district court so applied the enhancement. *Id.* On appeal, Mitchell argued that the sentence enhancement pursuant to § 2A3.2(b)(2)(B) did not apply to him because (1) the subsection could not be applied in cases of attempt, and (2) the sentence enhancement could not apply in the case of a sting operation. *Id.* at 556.

The *Mitchell* court ruled that the "plain language" of § 2A3.2(b)(2)(B) did not apply in cases of attempted criminal sexual abuse where the victim is an undercover agent. *Id.* at 556-57. Noting both that the language used in the subsection–"unduly influenced"–and the language used in the commentary–"compromised"–are written in the past tense, the court reasoned that "an honest

---

[8] Both United States District Judge Edward H. Johnstone and Chief United States District Judge John Heyburn of the Western District of Kentucky adopted Judge Kennedy's reasoning in her *Root* dissent when faced with this issue. *United States v. Boman*, No. 3:03CR24-J; *United States v. Hamm*, 281 F.Supp.2d 929 (W.D. Ky. 2003).

[9] An undercover agent using the screen name "ilgirl4u" entered a chat room entitled "I Love Older Men!!" and was contacted by Mitchell. *Mitchell*, 353 F.3d at 554. Mitchell and "Dena," the undercover agent's fourteen year old persona, exchanged instant messages and emails over the course of eleven days. *Id.* Many of the conversations between the two were explicitly sexual in nature. *Id* at 554-55. Mitchell traveled to a hotel in Hillside, Illinois, where he had arranged to meet with "Dena," and was arrested upon arrival. *Id.* at 555.

reading of the plain language of the guideline would indicate that it could not apply where the participant had either failed in his attempt to influence the victim or where the two otherwise had not engaged in prohibited sexual conduct." *Id.* at 556. Because the majority believed that the only way to apply § 2A3.2(b)(2)(B) to cases of attempt would be to "use a grammatical shoehorn and rewrite the guideline and its commentary in the present tense," the court felt that the two level enhancement was erroneously applied to Mitchell's case. *Id.* at 557.

Noting that the Guidelines had failed to provide a definition of "undue influence," the court examined how the term was defined in a variety of civil cases and treatises involving the law of contracts, wills, and trusts. *Id.* at 557-58. The court also cited the dictionary definition of "undue influence." *Id.* at 558. The court canvassed the language provided in these various sources to illustrate the notion that undue influence involves "an actual target of influence and contemplates a situation where the 'influencer' has succeeded in altering the behavior of the target." *Id.* Although the court acknowledged the conflicting result reached by the Eleventh Circuit in *Root*, as well as the fact that its outcome in *Mitchell* would create a circuit split, it found the *Root* court's evaluation of the language in § 2A3.2(b)(2)(B) to be unfaithful to the text, arguing that the *Root* court's holding required a reading of the language of the Guidelines in the present rather than the past tense. *Id.* at 561-62.

The court noted that the definition of victim includes undercover agents posing as children, but found that this definition was at odds with the application of § 2A3.2(b)(2)(B), for requiring the court to examine the effect of the defendant's conduct on a fictitious victim is nonsensical. *Id.* at 559. The court read as support for its position the existence of the rebuttable presumption contained in comments to § 2A3.2(b)(2)(B). *Id.* at 560. The court reasoned that, because the victim in a case involving an undercover agent is "manipulate[d]" by the government, the government could create a situation of "undue influence" in every case. *Id.* As a result, the defendant would never be able to adequately rebut the presumption in a sting operation, thus transforming a rebuttable presumption into an irrebuttable presumption. *Id.*

Judge Easterbrook dissented from the majority opinion, arguing that the majority incorrectly and unnecessarily read the "unduly influenced" language to require that the defendant has succeeded in completing the crime. *Id.* at 564 (Easterbrook, J., dissenting). The dissent noted that all of § 2A3.2 is written in the past tense, implying that the majority read too much into the tense of the verb. *Id.* at 565 (Easterbrook, J., dissenting). The dissent also noted that the phrase "unduly influenced" required only that the influence, and not the actual crime, lie in the past. *Id.* at 564-65 (Easterbrook, J., dissenting). The dissent concluded that this should have been an easy case, arguing that the definition of victim in the Guidelines conclusively answers the question in the affirmative of whether § 2A3.2(b)(2)(B) is available in cases involving undercover agents. *Id.* at 569 (Easterbrook, J., dissenting).

### 3. *Problems with the Eleventh Circuit and Seventh Circuit Interpretations*

Both the *Root* and *Mitchell* decisions present reasonable, albeit contrary, interpretations of § 2A3.2(b)(2)(B). However, the reasoning employed in both cases is not without flaws; an examination of the weaknesses in the reasoning in each case is also helpful to this court in reaching its own interpretation.

While the *Root* court did hold true to the interpretation of "victim" in the Guidelines by finding that § 2A3.2(b)(2)(B) was applicable to situations involving attempted criminal sexual abuse in a sting operation, the court ignores the directive in comments of the Guidelines, specific to § 2A3.2(b)(2)(B), which instructs the court to engage in an individual factual inquiry to determine whether the defendant's actions compromised the voluntariness of the victim's actions. Instead, the court ruled that in cases dealing with undercover agents, the proper focus of the court's inquiry

should be on the defendant's conduct, without regard to the effect on the victim. *Root*, 296 F.3d at 1234. While this approach avoids a futile attempt to evaluate the effect of the defendant's conduct on a fictitious victim and guides future courts in the application of § 2A3.2(b)(2)(B) to undercover sting operations, the *Root* majority failed to satisfactorily explain the basis upon which it supplanted the directive provided in the Guidelines with its own method of evaluating cases involving undercover law enforcement officers.

In contrast, while the *Mitchell* court defers to the directive that the *Root* court ignored and holds that evaluation of the appropriateness of § 2A3.2(b)(2)(B) is necessarily a victim-focused inquiry as a result, the *Mitchell* rationale sweeps unnecessarily broadly. The *Mitchell* court's reasoning effectively makes it impossible to apply § 2A3.2(b)(2)(B) in any case of attempt, regardless of whether the victim is an actual child or an undercover agent. It would have been possible to conclude that § 2A3.2(b)(2)(B) was unavailable with respect to defendant Mitchell without precluding its possible application in such a vast array of future cases.[10] The dissent accurately and perceptively points out one overly zealous aspect of the majority reasoning in noting that (1) contrary to the majority's view, the use of the past tense in § 2A3.2(b)(2)(B) requires only that the influence, rather than the completed act, be in the past, and (2) all of § 2A3.2 is written in the past tense, indicating that such heavy reliance upon the tense of the verb in § 2A3.2(b)(2)(B) may be misguided. Additionally, it is problematic to borrow the definition of "undue influence" from the civil context to provide support for the majority's holding that the phrase "undue influence" requires that the influencer succeed in bringing about the sought-after effects on the influenced. The case law and treatises that the *Mitchell* court referenced interpreted the phrase in a different context and for a different purpose. "[C]riminal law is distinguished [from civil law] by its punitive purposes . . . [and] its concern with the blameworthiness of the defendant . . . . In contrast, the civil law is defined as a compensatory scheme, focusing on damage rather than on blameworthiness . . . ." Kenneth Mann, *Punitive Civil Sanctions*: *The Middleground Between Criminal and Civil Law*, 101 Yale L.J. 1795, 1799 (1992).

Our reservations with aspects of the reasoning of both *Root* and *Mitchell* lead us to decline to adopt the position of either opinion in its entirety. Rather, after reviewing the reasoning in both cases, we forge a third and different path in our approach to the application of U.S.S.G. § 2A3.2(b)(2)(B).

## C.

We hold that § 2A3.2(b)(2)(B) is not applicable in cases where the victim is an undercover agent representing himself to be a child under the age of sixteen. In so holding, we are satisfied that this reading is the most logical and well-reasoned of our options in interpreting the applicability of § 2A3.2(b)(2)(B).

The definition of "unduly" is "without due cause or justification; without proper regard to right and wrong; unrightfully, improperly." The definition of "influence" is "to exert influence upon, to affect by influence;" "to affect the mind or action of." Oxford English Dictionary, http://dictionary.oed.com/. The dictionary definition of "undue influence" suggests, by its reference to affecting the mind or action of another, that there must be an actual person who is affected in some way. An undercover law enforcement officer who is not at all persuaded in thought or in deed, therefore, cannot be "unduly influenced." Thus, the plain language of § 2A3.2(b)(2)(B) indicates

---

[10]The *Mitchell* majority states in its opinion that it need not decide the applicability of § 2A3.2(b)(2)(B) to a case involving an actual victim, 353 F.3d at 560, but where the act falls short of completion, the court leaves itself very little room in its reasoning to distinguish such a situation in a way that would allow for the application of § 2A3.2(b)(2)(B).

that the two level enhancement should not be available in cases involving undercover agents rather than actual minors.

While it is true that the Guidelines specifically define victim to include undercover agents posing as underage children for purposes of interpreting the language of § 2A3.2, this definition should not apply in provisions in which such a definition does not make sense. Section 2A3.2(b)(2)(B) is not the only section of § 2A3.2 in which interpreting "victim" to include an undercover agent would require a distorted or illogical reading of the Guidelines; § 2A3.2(b)(1) provides for a two level enhancement where the victim "was in the custody, care, or supervisory control of the defendant." Although ostensibly the Guideline definition of victim applies to this subsection as well, it is impossible to conjure a situation in which "victim" in this context could be fairly read to include an undercover agent. Only by altering the meaning of the subsection could this provision possibly apply where the victim is an undercover agent.

The same reasoning applies to § 2A3.2(b)(2)(B). Because the Guidelines specify that the court must look to whether the defendant's "influence over the victim compromised the voluntariness of the victim's behavior," U.S.S.G. § 2A3.2(b)(2)(B), application note 4, the court must engage in a victim-focused inquiry when applying this subsection in every case. There is no authority in the Guidelines for ignoring this provision where the victim is in reality a fictitious persona created by an undercover agent. Reading into the Guidelines a different standard to apply in such cases without any indication within the text of the Guidelines that such an action is appropriate, as the Eleventh Circuit did in *Root*, comes perilously close to judicial rewriting of the Guidelines.

Reaching this result is supported by the *Mitchell* court's powerful observations regarding the fact that applying § 2A3.2(b)(2)(B)'s rebuttable presumption to cases involving an undercover agent renders the presumption irrebuttable. Because the government official presenting himself to the defendant will have full control over all aspects of the characteristics of the fictitious victim, the victim will always appear as an unwilling and inexperienced victim whose will is easily overcome. The defendant, faced with such a victim, will find it virtually impossible to show that the victim's will was not overcome. This result highlights the problems that arise in evaluation of the undue influence sentence enhancement where there is no real victim. One option for alleviating this worrisome result is to ignore the rebuttable presumption in cases involving undercover agents posing as victims, as opposed to cases involving actual victims. In fact, the district court did exactly that in sentencing Chriswell, presumably in an effort to apply § 2A3.2(b)(2)(B) in the most reasonable manner. However, there is no support for ignoring the rebuttable presumption in the Guidelines where the victim is fictitious. In our view, such piecemeal application of § 2A3.2(b)(2)(B), undertaken to preserve the possibility of applying the two level enhancement in cases involving an undercover agent while simultaneously attempting to mitigate the potential harshness of the result that may ensue, also borders on impermissible judicial lawmaking.

We do not find it necessary today to hold that § 2A3.2(b)(2)(B) is inapplicable in all attempt cases. First, § 2A3.2 clearly applies to both attempted as well as completed instances of criminal sexual abuse. Second, the definition of "influence"–"to affect the mind *or* action of," Oxford English Dictionary, http://dictionary.oed.com/–does not appear to require that the sexual act take place, due to the use of the word "or" in the definition. The plain meaning of the word indicates that an effect or impact on the influenced person's mind, with or without an accompanying act, suffices. Third, we do not find compelling the *Mitchell* court's interpretation of the use of the past tense in § 2A3.2(b)(2)(B) as requiring a completed act. As the dissent noted, the use of the past tense requires only that the influence, rather than the completed act, be in the past. Therefore, we agree with the *Mitchell* dissent that the majority in that case read too much into the verb tense in § 2A3.2(b)(2)(B). In any event, we need not decide the question of whether § 2A3.2(b)(2)(B) might

apply in some case involving an attempt to engage in sexual activity with a real victim in order to dispose of this case, and therefore, we decline to reach that issue at present.

In light of our ruling that § 2A3.2(b)(2)(B) is inapplicable in cases involving undercover sting operations, we need not address Chriswell's second argument on appeal that the district court erred in its application of § 2A3.2(b)(2)(B) to the facts of his case.

Chriswell has also argued via supplemental letter brief that the case must be remanded for resentencing in light of the Supreme Court's decision in *Booker*. Because we have already determined that the case must be remanded to the district court due to the district court's application of § 2A3.2(b)(2)(B), we find it unnecessary to engage in plain error analysis under *Booker* at this time. We note, however, that the district court on remand must take into account the now-advisory nature of the Guidelines pursuant to *Booker*.

## III.

For the foregoing reasons, we reverse the district court's imposition of a two-level enhancement pursuant to U.S.S.G. § 2A3.2(b)(2)(B) and remand the case for resentencing in light of this opinion as well as the Supreme Court's opinion in *Booker*.