*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0224p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

CHARLES ANTHONY DAVIDSON (03-6544); DEBRA ANN DAVIDSON (03-6549),

        *Defendants-Appellants.*

Nos. 03-6544/6549

>

---

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 03-00006—Danny C. Reeves, District Judge.

Argued: November 2, 2004

Decided and Filed: May 18, 2005

Before: MOORE and GIBBONS, Circuit Judges; EDMUNDS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Michael Dean, Irvine, Kentucky, William G. Crabtree, London, Kentucky, for Appellants. Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee. **ON BRIEF:** Michael Dean, Irvine, Kentucky, William G. Crabtree, London, Kentucky, for Appellants. Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.

    MOORE, J., delivered the opinion of the court, in which EDMUNDS, D. J., joined. GIBBONS, J. (p. 10), delivered a separate concurring opinion.

---

[*] The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

### OPINION

---

KAREN NELSON MOORE, Circuit Judge.  These appeals concern the applicability of two subdivisions of the U.S. Sentencing Guidelines ("Guidelines").[1]  Defendant-Appellant Debra Ann Davidson ("Mrs. Davidson") challenges the district court's decision to apply both the § 2D1.1(b)(1) firearm enhancement ("Firearm Enhancement") and the § 2D1.1(b)(5)(B) substantial-risk-of-harm-enhancement ("Substantial-Risk-of-Harm Enhancement"), while Defendant-Appellant Charles Anthony Davidson ("Mr. Davidson") challenges only the application of the Substantial-Risk-of-Harm Enhancement to his sentence.  *See* U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2D1.1(b)(1), 2D1.1(b)(5)(B).  We conclude that, pursuant to *United States v. Booker*, 125 S. Ct. 738 (2005), the district court plainly erred in applying these enhancements, on the basis of judge-found facts, as part of the (formerly mandatory) Guidelines sentencing system.  Moreover, we conclude that the Substantial-Risk-of-Harm Enhancement cannot properly be applied, on the facts of this case, for purposes of determining the recommended Guidelines sentence.  Accordingly, we **VACATE** the sentences of both Mr. and Mrs. Davidson and **REMAND** the cases to the district court for further proceedings consistent with this opinion and with the Supreme Court's decision in *Booker*.

### I.  BACKGROUND

On January 28, 2003, federal agents accompanied by state and municipal police officers executed a search warrant on the residence of Mr. and Mrs. Davidson.  The search warrant authorized the officers to search for a fugitive by the name of Mr. Mooneyham and to search the couple's residence for documents that might link Mooneyham to the Davidsons.  Although they did not find Mooneyham, the officers found a Ford Expedition connected to Mooneyham, as well as a motor home containing a number of Mr. Mooneyham's personal effects.  More importantly for this case, the officers made several discoveries suggestive of illegal activity, including:  a working methamphetamine laboratory in the loft of the Davidsons' barn; a marijuana-growing operation in the crawlspace of a workshop located next to the barn; numerous unlabeled pill bottles; several baggies of an unidentified powder; additional marijuana; and numerous vehicles with the Vehicle Identification Number ("VIN") altered or obscured, or with improper registrations.

A federal grand jury indicted Mr. and Mrs. Davidson on multiple counts relating to drug manufacture, drug possession, and possession of stolen vehicles.  The Davidsons moved to suppress the evidence seized by the officers during their search of the Davidsons' property, and the district court granted this motion in part.[2]  Four days before the scheduled trial date, and approximately two

---

[1]Although both defendants were sentenced on November 21, 2003 — after the November 1, 2003, effective date of the 2003 edition of the U.S. Sentencing Guidelines ("Guidelines") Manual, *see* U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.11 (Nov. 1, 2003) — no party challenges the use of the 2002 Guidelines Manual in these appeals.  Unless otherwise noted, all references to individual guideline provisions refer to the 2002 edition of the Guidelines Manual.

[2]The government "d[id] not object to the suppression of:  (i) the marijuana and marijuana seeds seized from the refrigerator/freezer in the kitchen, (ii) the contents of the opaque pill bottles containing pills which, although visible, were not identifiable by the searching officers prior to opening the pill bottles, and (iii) the vehicles that did not have obscured, altered or removed vehicle identification numbers (VINSs)."  Record (R.) 49 at 4 (Dist. Ct. Mem. & Order filed June 9, 2003).  Over the government's objection, the district court granted the Davidsons' request that marijuana seized from "inside the refrigerators and/or freezers," R. 49 at 20, and all of the marijuana seeds seized from the property be suppressed.  R. 49 at 21.  However, the district court declined to suppress other evidence, including "the marijuana in bags laying on the pool table and the plants in the indoor growing operation," R. 49 at 20, the "filters and baggies

months after the district judge's ruling on their joint suppression motion, both Mr. and Mrs. Davidson accepted plea offers from the government. The nearly identical plea agreements provided that both Mr. and Mrs. Davidson would plead guilty to Counts One (attempting to manufacture methamphetamine) and Six (possession of a stolen 1988 Chevrolet pickup truck which had traveled in interstate commerce). In return, the government agreed to move to dismiss the remaining counts and to make certain sentencing recommendations and a factual stipulation.[3]

The probation office recommended that Mrs. Davidson be sentenced at Total Offense Level 30, Criminal History Category I, for a guideline range of 97 to 121 months' imprisonment, followed by 4 to 5 years of supervised release. This recommendation, based on the count with a higher Adjusted Offense Level (Count One), began with a Base Offense Level of 30 due to the marijuana equivalency of the substances involved. The probation office applied the two-level Firearm Enhancement and the three-level Substantial-Risk-of-Harm Enhancement, but subtracted two levels for Mrs. Davidson's minor role in the offense under U.S.S.G. § 3B1.2(b). To this Adjusted Offense Level of 33, the probation office applied a three-level downward adjustment for acceptance of responsibility, resulting in a Total Offense Level of 30.

In regard to Mr. Davidson, the probation office recommended that he be sentenced at Total Offense Level 32, Criminal History Category I, for a guideline range of 121 to 151 months' imprisonment, followed by 4 to 5 years of supervised release. As with Mrs. Davidson, Mr. Davidson was found to have a Base Offense Level of 30 due to the marijuana equivalency of the substances involved in Count One. The probation office applied the two-level Firearm Enhancement and the three-level Substantial-Risk-of-Harm Enhancement. Unlike the case of Mrs. Davidson, however, the probation office did not apply any adjustment for Mr. Davidson's role in the offense under § 3B1.2. This left Mr. Davidson with an Adjusted Offense Level of 35. The probation office then applied a three-level downward adjustment for acceptance of responsibility, resulting in a Total Offense Level of 32.

Over the objections of both defendants, the district court sentenced Mr. and Mrs. Davidson according to the probation office's recommendations. The district court found, as a preliminary matter, that the Davidsons' plea agreements were not entered under Federal Rule of Criminal Procedure 11(c)(1)(C), the rule binding the district court to a recommendation once it accepts the plea agreement. Although the district judge did not state the applicable provision explicitly, this was in effect a finding that the portions of the plea agreements addressing the Firearm Enhancement must have been entered under Federal Rule of Criminal Procedure 11(c)(1)(B), the rule providing for plea agreements that do *not* bind the district court. The district court then overruled the Davidsons' objections to the application of the Firearm Enhancement and the Substantial-Risk-of-Harm Enhancement, but did not separately address the government's recommendation in the plea agreement that the Firearm Enhancement not be applied to Mrs. Davidson. The district court found that it was appropriate to allow Mrs. Davidson a minor role adjustment under § 3B1.2(b), but that this adjustment did not prevent the application of the Substantial-Risk-of-Harm Enhancement to her

---

found inside [some of the] pill bottles" in the couple's bedroom, R. 49 at 24, the methamphetamine lab in the loft of the couple's barn, R. 49 at 26, and the "four vehicles with obscured, altered or irregular VINs," R. 49 at 28.

[3]The portion of the agreement at issue in Mrs. Davidson's appeal reads as follows:
The defendant, Charles Davidson, admits ownership of the .3[8] caliber pistol located in the dresser. Based upon this admission *the United States agrees and stipulates that the defendant, Debra Davidson, should not be assessed an additional enhancement for the presence of the firearm.* The defendant, Charles Davidson, retains his right to contest any potential enhancement he would receive for the firearm. The United States agrees that other firearms not seized from the residence were not related to the crimes for which the defendants are entering pleas.
Joint Appendix ("J.A.") at 44, R. 71 at 4 (Mrs. Davidson's plea agreement) (emphasis added).

sentence.[4] On the basis of these findings, the district court sentenced Mrs. Davidson to 97 months of imprisonment followed by 4 years of supervised release, and Mr. Davidson to 121 months of imprisonment followed by 4 years of supervised release. Both Mr. Davidson and Mrs. Davidson were sentenced to the minimum terms of imprisonment possible under the district court's Guidelines calculations.

Both Mr. and Mrs. Davidson appeal the district court's decision to apply the Substantial-Risk-of-Harm Enhancement. Mrs. Davidson also appeals district court's characterization of the portion of her plea agreement addressing the Firearm Enhancement as having been entered pursuant to Rule 11(c)(1)(B), rather than Rule 11(c)(1)(C). On July 22, 2004, we granted the Davidsons' request to allow supplemental briefing in response to the Supreme Court's decision in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). However, before supplemental briefs were filed, we granted the government's request to continue supplemental briefing pending our decision in *United States v. Koch*, 383 F.3d 436 (6th Cir. 2004) (en banc), *overruled by Booker*, 125 S. Ct. 738.

## II. ANALYSIS

### A. Jurisdiction

The district court had jurisdiction under 18 U.S.C. § 3231 because both Mr. and Mrs. Davidson were charged with violations of federal criminal law. As both defendants timely appealed a final judgment of the district court, we have jurisdiction pursuant to 28 U.S.C. § 1291.

### B. Sixth Amendment Claims

In *Booker*, the Supreme Court concluded that the Sixth Amendment prevents federal judges from making factual determinations that increase a defendant's sentence on the basis of facts not reflected in the jury's verdict. *Booker*, 125 S. Ct. at 745-47, 756. The Court went on to conclude that this constitutional holding required the invalidation of 18 U.S.C. §§ 3553(b)(1) and 3742(e), "mak[ing] the Guidelines effectively advisory." *Id*. at 757.

Although the Davidsons did not raise Sixth Amendment claims in district court, we have previously held that sentences imposed on the basis of unconstitutional judicial fact-finding satisfy the plain-error test. *See generally United States v. Oliver*, 397 F.3d 369, 380-81 (6th Cir. 2005). In this case, absent the judicial findings that Mrs. Davidson possessed a firearm in connection with the attempt to manufacture methamphetamine, and that the attempt to manufacture methamphetamine created a substantial risk of harm to human life or the environment, Mrs. Davidson's sentencing range would have been substantially lower. Her Total Offense Level would have been 25, rather than 30, resulting in a sentencing range of 57-71 months, rather than 97-121 months.[5] By imposing a sentence of 97 months, the district court sentenced Mrs. Davidson to an additional 26 months of imprisonment beyond the 71 months authorized by the plea agreement alone. Similarly, absent the judicial findings that Mr. Davidson possessed a firearm in connection with the attempt to manufacture methamphetamine, and that the attempt to manufacture methamphetamine created a substantial risk of harm to human life or the environment, Mr.

---

[4] The district court found that it was "not appropriate" to apply the safety-valve provision, U.S.S.G. § 5C1.2, to either defendant's sentence. J.A. at 280, R. 85 at 54 (Sentencing Hr'g).

[5] Moreover, without the district court's finding that she possessed a firearm, Mrs. Davidson would have been eligible for sentencing under the safety-valve provision, U.S.S.G. § 5C1.2, and the district court could accordingly have sentenced her to less than the statutory-minimum sentence of 60 months. *See* U.S.S.G. § 5C1.2(a)(2) (requiring for application of the safety-valve provision that "the defendant did not use violence or credible threats of violence *or possess a firearm* or other dangerous weapon (or induce another participant to do so) in connection with the offense") (emphasis added); 18 U.S.C. § 3553(f)(2); *see also* 21 U.S.C. § 841(b)(1)(B).

Davidson's sentencing range would have been substantially lower. His Total Offense Level would have been 27, rather than 32, resulting in a sentencing range of 70-87 months, rather than 121-151 months. By imposing a sentence of 121 months, the district court sentenced Mr. Davidson to an additional 34 months of imprisonment beyond the 87 months authorized by the plea agreement alone. Given that both Mr. and Mrs. Davidson's sentences exceed the range authorized by their plea agreements, we must conclude that those sentences constitute plain error. *Id*. at 380-81. We are accordingly required to vacate the Davidsons' sentences and remand the cases to the district court.

## C. Guidelines Calculations

Even if there were no Sixth Amendment violations, we would still be required to reverse the decision of the district court. As we have previously suggested, the sentencing structure set out by the *Booker* remedial opinion cannot function absent appellate review of a district court's Guidelines calculations. *See United States v. Chriswell*, 401 F.3d 459, 463 (6th Cir. 2005) ("[T]he proper interpretation of the various provisions of the Sentencing Guidelines remains vitally important for this court."). The clear *Booker* requirement that the district court "consider" the applicable Guidelines range, *Booker*, 125 S. Ct. at 764, would otherwise be meaningless. *Cf. United States v. Scott*, --- F.3d ---, No. 04-1053, 2005 WL 949040, at *1 (7th Cir. Apr. 25, 2005) ("An incorrect application of the guidelines requires resentencing under the post-*Booker* sentencing regime."); *United States v. Skoczen*, --- F.3d ---, No. 03-1960, 2005 WL 949051, at *10 (7th Cir. Apr. 20, 2005) ("Even under an advisory regime, if a district court makes a mistake in calculations under the Guidelines, its judgment about a reasonable sentence would presumably be affected by that error and thus (putting aside the implications of plain error review) remand would be required just as before."); *United States v. Crosby*, 397 F.3d 103, 111-112 (2d Cir. 2005) ("A judge cannot satisfy this duty [to consider the Guidelines recommendation] by a general reference to the entirety of the Guidelines Manual, followed by a decision to impose a 'non-Guidelines sentence.'"). We continue, in reviewing individual Guidelines determinations, to apply the standards of review we applied prior to *Booker*. *See Chriswell*, 401 F.3d at 463; *cf. United States v. Hughes*, 401 F.3d 540, 556-57 (4th Cir. 2005). Accordingly, for purposes of determining the Guidelines *recommendation*, we continue to accept a district court's factual finding that a defendant possessed a firearm during a drug crime unless it is clearly erroneous, *United States v. Solorio*, 337 F.3d 580, 599 (6th Cir.), *cert. denied*, 540 U.S. 1063, 1067 (2003), but to subject a district court's finding on a mixed question of law and fact — such as the existence of a substantial risk of harm to human life under U.S.S.G. § 2D1.1(b)(5)(B) — to de novo review. *United States v. Layne*, 324 F.3d 464, 468 (6th Cir.), *cert. denied*, 124 S. Ct. 270 (2003); *see also Chriswell*, 401 F.3d at 463.

### 1. Characterization of Mrs. Davidson's Plea Agreement Under Rule 11

Prior to determining whether the district court erred in applying the Firearm Enhancement to Mrs. Davidson's sentence, we must determine whether the district court correctly concluded that it was not bound by the government's "stipulation" in Mrs. Davidson's plea agreement. We review de novo a district court's application of the Federal Rules of Criminal Procedure. *See United States v. Burke*, 345 F.3d 416, 421 (6th Cir. 2003), *cert. denied*, 124 S. Ct. 1731 (2004). As an initial matter, we note that we are troubled by the plea agreement's use of the phrases "[t]he United States agrees that" and "the United States agrees *and stipulates* that" in reference to different portions of the government's sentencing recommendation. Joint Appendix ("J.A.") at 44 (Mrs. Davidson's Plea Agreement) (emphasis added). Such a clear distinction in language could suggest to a defendant, unlearned in the intricacies of federal sentencing law, that the government's recommendation was somehow binding on the court in regard to the portion of the plea agreement where the "and stipulates" language was used. J.A. at 44 (Mrs. Davidson's Plea Agreement).

Nonetheless, we must conclude that the district court was correct in determining that Mrs. Davidson's plea agreement was not entered under Rule 11(c)(1)(C). First, several statements during

the Rule 11 hearing suggest that the parties and the district court understood the portion of the plea agreement addressing the Firearm Enhancement to be a recommendation pursuant to Rule 11(c)(1)(B), which does not bind the district court, rather than an agreement pursuant to Rule 11(c)(1)(C), which binds the district court once it accepts the plea agreement. *See, e.g.*, J.A. at 206, Record ("R.") 63 at 13 (Rearraignment) (statement by the Assistant U.S. Attorney ("AUSA") responsible for this case) ("The parties have entered into guideline recommendations and calculations for the Court, understanding they're only recommendations."); J.A. at 214 , R. 63 at 21 (Rearraignment) (statement by the Court) ("Now, do you understand that until that process has been followed [i.e., preparation of the PSR], until the reports have been prepared and until they have been reviewed and any objections resolved, that it would be impossible for the Court or for your attorneys to know exactly what the guideline range would be that would be called for in each case? Do you each understand that?"); J.A. at 215-16, R. 63 at 22-23 (Rearraignment) (statement by the Court) ("However, do [you] each understand that you would *not have the right to withdraw* your plea of guilty on the grounds that your prediction or your attorney's belief as to the guideline range might prove to be inaccurate? Do you each understand that?) (emphasis added). Second, policy statements in the U.S. Sentencing Guidelines make it clear that the Guidelines do not envision sentencing courts being bound by factual stipulations in a plea agreement. U.S.S.G. § 6B1.4(d); *United States v. Treadway*, 328 F.3d 878, 884 (6th Cir.), *cert. denied*, 124 S. Ct. 166 (2003); *see also United States v. Gaines*, 888 F.2d 1122, 1123 (6th Cir. 1989). Third, Rule 11(c)(4) requires the district court to "inform the defendant that to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the agreed disposition will be included in the judgment," but no such statement regarding a Rule 11(c)(1)(C) plea appears in the record of this case. *See* FED. R. CRIM. P. 11(c)(4).

In this case, a review of the rearraignment transcript suggests that both the district court and the government believed that the plea agreement had been entered under Rule 11(c)(1)(B). By contrast, the plea agreement itself was silent as to whether it was entered under Rule 11(c)(1)(B) or Rule 11(c)(1)(C). Given the district court's statements at the rearraignment hearing that the plea agreement was nonbinding and not subject to withdrawal, and the absence of any explicit mention of Rule 11(c)(1)(C) in either the plea agreement or the rearraignment transcript, we conclude that the plea was entered under Rule 11(c)(1)(B).[6] In the future, however, we note that it would be good practice for district judges, as a matter of course, to state explicitly on the record prior to accepting a plea agreement containing a purported "stipulation" by the government whether they understand

---

[6]We emphasize that we do not condone the behavior of the Assistant U.S. Attorney ("AUSA") responsible for this case at the district court. The AUSA's behavior was, at a minimum, inconsistent with the spirit of the plea agreement, in which the United States agreed to recommend to the district court that the Firearm Enhancement not be applied against Mrs. Davidson. However, despite this representation, the United States did not object to the Presentence Report ("PSR") prepared in regard to Mrs. Davidson, did not request at sentencing that the district court reconsider the probation office's recommendation, and did not make any objection after the district court imposed a sentence clearly contrary to the recommendation and stipulation in the plea agreement. J.A. at 227-293, R. 85 at 1-67 (Sentencing Hr'g); *see* J.A. at 331, R. 70 ("Please be advised that the United States has no objections to the presentence report prepared on the above-named defendant [Mrs. Davidson].") (letter from the AUSA responsible for this case to the probation officer responsible for Mrs. Davidson's presentence report, dated October 22, 2003); J.A. at 270-76, R. 85 at 44-50 (Sentencing Hr'g) (AUSA fails to say anything in support of Mrs. Davidson's argument that the Firearm Enhancement should not be applied to her); J.A. at 291, R. 85 at 65 (AUSA fails to object after the court applies the Firearm Enhancement to Mrs. Davidson). Instead, the AUSA made a statement for the record that "it was never the United States' position for [Mrs. Davidson's plea agreement] to be an 11.(c)(1)(C) plea," J.A. at 282, R. 85 at 56 (Sentencing Hr'g) (statement of the AUSA), and re-cross-examined Mr. Davidson in a manner which appears explicitly designed to emphasize Mrs. Davidson's connection to the gun. *See* J.A. at 243, R. 85 at 17 (Sentencing Hr'g) (Mr. Davidson Test.). In a situation where the United States had obtained guilty pleas from two defendants only after it had "agree[d] and stipulate[d]," J.A. at 44, R. 71 at 4 (Mrs. Davidson's plea agreement); J.A. at 51, R. 72 at 4 (Mr. Davidson's plea agreement), that Mrs. Davidson should not be assessed the Firearm Enhancement, such acts and omissions fall far below the standard of conduct expected of federal prosecutors.

any portions of that agreement to be governed by Rule 11(c)(1)(C).[7]  Such a practice would help ensure that no defendant is unfairly surprised by a district court's decision not to accept a "stipulation" by the prosecution.

### 2.  Application of Firearm Enhancement as to Mrs. Davidson

For purposes of determining the Guidelines recommendation, the district court's determination that the Firearm Enhancement applied to Mrs. Davidson would not be error.  As we noted before the *Booker* decision, "[e]nhancement analysis under § 2D1.1(b)(1) has two parts." *Solorio*, 337 F.3d at 599.  First, to meet its initial burden, the government must show "by a preponderance of the evidence that the defendant possessed the firearm" while committing a drug trafficking offense.  *Id.*[8]  Second, if the government is successful in meeting its initial burden, the burden "shifts to the defendant to demonstrate that it was clearly improbable that the weapon was connected to the offense." *Id.* (internal quotations omitted).  "Only if the defendant can make this showing does the enhancement not apply." *Id.*

Reviewing for clear error, we do not believe it would be improper for the district court to apply the Firearm Enhancement for purposes of determining the recommended Guidelines sentence. Despite the stipulation in the plea agreement to the contrary, sufficient evidence existed to allow the district court to conclude, for purposes of the now non-mandatory Guidelines recommendation, that both prongs of the § 2D1.1(b)(1) test had been satisfied.  In particular, Mr. Davidson's testimony at the sentencing hearing suggested that Mrs. Davidson may have used the gun for protection when Mr. Davidson was not at home.  Given the presence of large quantities of drugs on the couple's property, we cannot conclude that it was error for the district court to conclude that it was not "clearly improbable" that the gun was connected to Mrs. Davidson's drug possession offense. Accordingly, on remand, it would not be error for the district court to apply the Firearm Enhancement for purposes of determining the Guidelines recommendation.

### 3.  Substantial-Risk-of-Harm Enhancement

Both Mr. and Mrs. Davidson assert that the district court erred in applying the Substantial-Risk-of-Harm Enhancement to their sentences.  As the same methamphetamine lab was involved in both convictions, we discuss the claims of Mr. and Mrs. Davidson together.  In determining whether the Substantial-Risk-of-Harm Enhancement can be applied in calculating the Guidelines recommendation, we must consider de novo the four factors set out in Comment 20 to § 2D1.1. These can be summarized as:  (i) quantity of hazardous materials and manner in which they were stored; (ii) manner of disposal of hazardous materials and likelihood of release into the environment; (iii) duration and extent of the manufacturing operation; and (iv) location of the lab and the number of lives placed in "substantial risk of harm." *See* U.S.S.G. § 2D1.1, cmt. 20.

The district court found that the first and third factors did not suggest that the enhancement should be applied, as there was neither a large quantity of material nor evidence that the lab had been in operation for any extended period of time (this was apparently the first manufacturing

---

[7]We are not presented with, and accordingly do not address, a question as to the effect of *Booker* on Rule 11(c)(1)(C) pleas more generally.

[8]This "[p]ossession may be actual or constructive." *United States v. Solorio*, 337 F.3d 580, 599 (6th Cir.), *cert. denied*, 540 U.S. 1063, 1067 (2003).  "To establish constructive possession, the government must show that the defendant had ownership, dominion, or control over the firearm or dominion over the premises where the firearm is located." *Id.* (internal quotations and brackets omitted).

attempt).[9] However, the court found that second and fourth factors did suggest that the enhancement should be applied. In regard to the second factor, the district court noted that there was no evidence of any plans for proper disposal of the materials and concluded that it was "fair for the Court to assume" that this meant the materials would not be disposed of in an environmentally safe manner. J.A. at 279, R. 85 at 53 (Sentencing Hr'g). In regard to the fourth factor, the court acknowledged that the lab was in a remote area, distant from the couple's residence and from any other residence. Nonetheless, the district court concluded that a significant number of lives were placed at substantial risk of harm because the lab area of the barn was padlocked, which "gives rise to the fact that if there was a problem that someone could be locked inside or locked outside that could prevent or could not provide assistance if it were needed," and the officers on the hazardous materials team "had to go into a very hazardous situation." J.A. at 280, R. 85 at 54 (Sentencing Hr'g).

We disagree with the district court. In regard to the second factor, our decision in *Layne* teaches that an absence of evidence of plans for proper disposal is not itself sufficient to make the second factor weigh in favor of applying the enhancement. *See Layne*, 324 F.3d at 470. In *Layne*, we noted:

> A law enforcement officer testified that, in laboratories such as this one, the methamphetamine producers usually dispose of waste through drains in the apartment. *It is not clear, however, that this occurred here.* Although it seems likely that Defendants disposed of hazardous chemicals via the drains in the apartment, it is not clear what impact such disposal would have had on the environment. *Accordingly, this factor is indeterminate.*

*Id.* (emphases added). We read *Layne* as suggesting that, in the absence of any evidence suggesting that hazardous materials were actually disposed of in an improper manner, it is not appropriate for the district court to speculate that they would be.

In regard to the fourth factor, the Davidsons argue that a methamphetamine lab located in a locked barn loft in a remote location is, relatively speaking, one of the least hazardous possible types of illegal methamphetamine manufacturing operations. We agree. The methamphetamine lab in this case was clearly less dangerous to human life than the lab involved in *Layne*, where we did affirm a Substantial-Risk-of-Harm Enhancement. *See id.* at 474. In *Layne*, we described the location of the lab involved as follows:

> The laboratory was in Dick's apartment, which itself is in a large apartment complex in a densely settled area near a number of other apartment complexes. Dick's apartment is within an eight-unit structure. At the time the search warrant was executed — while Defendants manufactured methamphetamine — the other seven units were occupied. An elementary school is housed nearby, and a creek flows through the apartment complex and empties into the Tennessee River.

*Id.* at 471. The lab operated by the Davidsons did not pose nearly so severe a danger as a lab in a densely populated residential area.

We also disagree with the district court's conclusion that the presence of a padlock on the door to the barn loft increased, rather than decreased, the risk to human life involved. First, had the lab not been locked, there would have been a substantial risk to curious children or passersby who might decide to explore the barn loft. Second, there is no evidence to suggest that the loft was ever locked while someone was inside the lab working with the hazardous materials. Accordingly, the

---

[9]The district court did not explicitly address the manner in which the substances were stored.

presence of a padlock militates against the application of the Substantial-Risk-of-Harm Enhancement.

While all methamphetamine production operations pose some risk, a locked barn loft in a remote location is one of the (relatively) safer places a person could set up an illegal methamphetamine lab. There is no indication in the record that this operation involved an unusually large quantity of hazardous materials, existed for an unusually long period of time, or actually resulted in the disposal of the materials in a way harmful to human life or the environment. Neither the language of § 2D1.1(b)(5)(B) nor its commentary suggests that the Substantial-Risk-of-Harm Enhancement should be applied any time methamphetamine is manufactured in anything less than professional laboratory conditions. We conclude that, on remand, it would be error for the district court to apply the Substantial-Risk-of-Harm Enhancement for purposes of determining the recommended Guidelines sentence.

### III.  CONCLUSION

We conclude that, pursuant to *Booker*, the district court plainly erred in applying the Firearm Enhancement and the Substantial-Risk-of-Harm Enhancement, on the basis of judge-found facts, as part of the (formerly mandatory) Guidelines sentencing system. Moreover, we conclude that the Substantial-Risk-of-Harm Enhancement cannot properly be applied, on the facts of this case, for purposes of determining the recommended Guidelines sentence. Accordingly, we **VACATE** the sentences of both Mr. and Mrs. Davidson and **REMAND** the cases to the district court for further proceedings consistent with this opinion and with the Supreme Court's decision in *Booker*.

---

**CONCURRENCE**

---

        JULIA SMITH GIBBONS, Circuit Judge, concurring.  I concur in all of Judge Moore's opinion except for footnote 6.  Footnote 6 appears to impose a duty on federal prosecutors to reiterate a recommendation in a plea agreement at every possible step in the proceeding, even when the recommendation is inconsistent with the true facts.  Ideally, a recommendation that the district court not apply a particular enhancement should be based on an expectation that the court will find that facts supporting the enhancement do not exist.  Sometimes, however, the government's information is imperfect, and either the presentence report or evidence at the sentencing hearing reveals an inconsistency between the true facts and the factual findings necessary to support a decision that an enhancement does not apply.  Here, while we do not know what information the parties had when they entered into the plea agreement, we know that both the presentence report and evidence at the sentencing hearing support application of the firearm enhancement to Mrs. Davidson. In this type of situation, a prosecutor's vigorous advocacy of factual findings that do not comport with reality is itself problematic.  Moreover, a prosecutor can adhere to a recommendation of a plea agreement without repeating its terms at every opportunity.  The district court was of course fully aware of the terms of the plea agreement and was required to make its findings based on the record. All the parties knew this, and the prosecutor had to make a judgment call about an appropriate course of conduct, given the circumstances.  I cannot say that the prosecutor here chose wrongly.