NOT FOR PUBLICATION
File Name: 05a1008n.06
Filed: December 22, 2005

NO. 04-5519

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

MICHAEL EDWARD SMITH,

     Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

_____/

BEFORE: KEITH, SUHRHEINRICH, and CLAY, Circuit Judges.

**SUHRHEINRICH, J.,** Defendant-Appellant Michael Edward Smith appeals the order of the district court sentencing him to a term of imprisonment of 121 months and a term of supervised release of three years. For the reasons that follow, we **VACATE** the sentence and **REMAND** for resentencing.

**I.**

On January 4, 2002, shortly after noon, a citizen driving his vehicle in Nashville, Tennessee noticed another vehicle stopped near the median, forcing others to maneuver around it. The vehicle was in front of the Sherith Israel Congregation, a Jewish synagogue that contained a preschool. Finding the situation "strange," the citizen looked more closely and observed what appeared to be an M-16 rifle pointed out of the driver-side window. Smith, the man holding the rifle, saw the citizen looking at him and began trailing him. The citizen noticed that Smith was following him and

-1-

did a U-turn. The citizen spotted a uniformed Metro Nashville Police Department ("MNPD") officer across the street. Smith abandoned chase and turned left. The citizen wrote down Smith's license plate number, went across the street, and reported the incident to the police officer.

When Smith pulled into his apartment complex parking lot, he found police officers already waiting for him. Smith ignored their attempts to stop him, instead leading them on a car chase. During the chase, Smith intermittently held a gun to his head and drove into oncoming traffic. He then proceeded to head south along I-65. At one point, Smith pulled over to the side of the road and exited his car. Due to the perceived danger and lack of backup, however, the officers were unable to get close enough to apprehend him. Eventually, Smith got back into his car and continued down the interstate. By this time, the pursuing officers were joined by backup, who took over primary position in the chase. Smith then exited the interstate, pulled into a parking lot, and surrendered to police.

A search of the car turned up the following: a loaded Colt AR-15 rifle with attached scope, two AR-15 magazines with a total of forty-seven rounds of ammunition, a loaded 9mm Glock 17 semi-automatic pistol, two loaded 9mm magazines with ten rounds each, a pair of binoculars, a range finder, an ASP police-type baton, a sand bag, and a rebel flag.

Smith's wife, Leslie Dawn Smith, consented to a search of the Smiths' apartment, which contained the following: 10 fully functional, reassembled hand grenades; one reassembled hand grenade that lacked propellant powder; a Maadi Griffin .50 caliber rifle; a Sig Sauer P226, 9mm semi-automatic pistol; 2082 rounds of assorted ammunition; blasting caps; nine military smoke grenades; a military fuse ignitor; fifty binary explosives; four CS tear gas grenades; two smoke grenades; two phosphorus flares; body armor; a military Kevlar helmet; a Mossberg 12-gauge

shotgun; boxes of military blasting caps and time fuse; military training manuals; videotapes regarding bombs and explosives; and books that included *The Turner Diaries*; *Hunter*; *The Testing of Negro Intelligence*; *Auschwitz*; *The Zionist Connection II*; *American Terrorist*; *Chemistry of Powder and Explosives*; and *Advanced Anarchist Arsenal*.

Smith consented to a search of a storage unit rented in his name. Inside, police found thirteen pipe bombs; aluminum powder; four electrical blasting M4 assembly caps; demolition charge tape; electric matches; safety fuse; assorted chemicals; hobby fuse; mercury; smoke grenades; military signal flares; black powder; smokeless powder; ten bottles of nitro methane; one Light Anti-Tank Weapons Systems (LAWS) rocket tube containing three smoke grenades; topographical maps; and 10,333 rounds of assorted ammunition.

Smith also revealed to MNPD detectives that he had a separate explosives and ordnance cache buried in rural Maury County. The detectives escorted Smith to the area Smith described. There, they met agents from the former Bureau of Alcohol, Tobacco, and Firearms ("ATF"). Smith identified five separate locations where he had buried the items. A subsequent search unearthed the following: two re-manufactured hand grenades; two gym-type bags containing an estimated twenty pounds of potassium perchlorate and twenty pounds of aluminum flash powder; seven military illumination flares; twelve military smoke grenades; fifteen commercial blasting caps; five rolls of military time fuse; a can marked "multi-purpose poring device demo"; one small package containing an unknown number of military blasting caps; eight cans of military grenade hand smoke; 960 rounds of .223 caliber ammunition; forty-four rounds of armor-piercing, 9mm ammunition; and nineteen M-16/AR-15 magazines.

Investigators also recovered from Smith's father-in-law five long firearms belonging to

Smith. A search of the ATF National Firearms Registration revealed that Smith had not registered any of the firearms or explosive devices.

Additionally, Smith admitted his role in transporting firearms from Oklahoma to Tennessee. He also gave federal investigators information about Jack Ray Spores of Midwest City, Oklahoma regarding Spores' possession and manufacture of explosive devices. Based on this information, Spores was later convicted of possession of unregistered firearms.

Smith has admitted his membership in the National Alliance, a neo-Nazi, white supremacy group. Smith's wife told police that Smith has a hatred for Jews, which is consistent with communications discovered by law enforcement[1] and Smith's own admissions.

On February 6, 2002, a federal grand jury indicted Smith on four counts. Count One charged Smith with possession of a firearm in a school zone, in violation of 18 U.S.C. §§ 922(q), 924(a). Count Two charged possession of unregistered firearms, in violation of 26 U.S.C. § 5861(d). Count Three charged unlawful manufacture of a firearm, in violation of 26 U.S.C. § 5861(f). Count Four charged transporting unregistered firearms, in violation of 26 U.S.C. § 5861(j).

Smith pleaded guilty to all four counts without a plea agreement. At sentencing, the district court found an offense level of 13 for Count One, which included the base offense level plus enhancements for a hate crime and reckless endangerment during flight.[2] Counts Two, Three, and

---

[1]For example, the district court found "particularly virulent" the following statement from an e-mail Smith sent a few days before the incident at the Sherith Israel Congregation: "If the Jews don't like what ET has to say, perhaps they should be stuffed head first into an oven."

[2]The most recently enacted version of the Sentencing Guidelines applies unless doing so would violate the Ex Post Facto Clause, U.S. Const. Art. I, § 9, cl. 3. U.S. Sentencing Guidelines Manual § 1B1.11 (2003) [hereinafter "U.S.S.G."]. The Presentence Investigation Report ("PSR") applied the 2002 edition of the Sentencing Guidelines, the edition in effect at the time the PSR was written. However, by the time of sentencing, the 2003 edition was enacted. The district court

Four had an offense level of 25. This took into account not only the base offense levels, but also the number and nature of the firearms; a finding that the firearms were possessed with knowledge, intent, or reason to believe they would be used in furtherance of another felony; and Smith's acceptance of responsibility and aid in prosecuting Spores. Smith was found to be in Criminal History Category I.

The Guidelines required the court to group the multiple counts. *See* U.S.S.G. § 3D1.1. The district court found that application of the grouping rules did not adequately take into account the hate crime and vulnerable victims enhancements to Count One because Count One was disregarded without increasing the offense level for Counts Two, Three, and Four. The court thus made an upward adjustment of 5 levels.

The relevant sentencing range for a level 30 crime and Criminal History Category I was a term of imprisonment of 97-121 months. U.S.S.G. ch. 5, pt. A, sentencing tbl. The district court sentenced Smith to a term of imprisonment of 121 months, with 60 months allocated to Count One and 61 months allocated to Counts Two, Three, and Four. This was to be followed by three years of supervised release and included an assessment of $325.

Smith timely appealed the judgment of the district court.

## II.

Smith raises the following issues on appeal: (1) whether the district court erred in enhancing his sentence for use or possession of a firearm in connection with another felony offense; and (2)

---

adopted the PSR with few exceptions, but did not state which version it was applying. Because it was the most recently enacted version, we will assume that the district court applied the 2003 edition. Whatever the differences between the two editions–and a comparison of the relevant portions revealed none–the district court will have the opportunity to clarify the issue on remand.

whether the district court erred in departing upward after applying the grouping rules under the Sentencing Guidelines. For the reasons that follow, we vacate Smith's sentence and remand for resentencing without reaching the merits of Smith's claims.

After this Court took jurisdiction but before the parties' final briefs were filed, the Supreme Court handed down its decision in *United States v. Booker*, 125 S. Ct. 738 (2005). *Booker* held that the Sixth Amendment prevents federal judges from enhancing a criminal defendant's sentence beyond that authorized by the Sentencing Guidelines on the basis of facts not reflected in a jury verdict or a guilty plea. *Id.* at 756; *United States v. Davidson*, 409 F.3d 304, 309 (6th Cir. 2005). The district court enhanced Smith's sentence based on the court's finding that Smith used or possessed a firearm in connection with another felony offense, which had the effect of increasing Smith's sentencing range beyond that authorized by his guilty plea.[3] In light of *Booker*, this was plain error and, thus, we must remand Smith's case for resentencing. *See United States v. Oliver*, 397 F.3d 369, 380-81 (6th Cir. 2005); *Davidson*, 409 F.3d at 309; *see generally United States v. Barnett*, 398 F.3d 516, 525-31 (6th Cir. 2005), *cert. dismissed*, 126 S. Ct. 33 (2005).

Upon resentencing, the district court is directed, in exercising its sentencing discretion, including the imposition of sentence enhancements to Counts Two, Three, and Four, and final upward departure, to be in accordance with *Booker* and this Court's opinion in *Jackson v. United States*, 408 F.3d 301 (6th Cir. 2005). That is, the district court must specifically (1) identify and state the applicable sentencing range of the Guidelines; (2) consider and state the advisory provisions of the Guidelines, including those relating to upward departure; (3) consider and state the

---

[3]We emphasize that nothing in this opinion should be read to say that the sentence originally imposed was inherently unreasonable.

factors identified in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense and the history and characteristics of the defendant, and the need for the sentence to (a) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (b) provide adequate deterrence to criminal conduct, (c) protect the public, and (d) provide the defendant with needed correctional treatment in the most effective manner; and (4) discuss the reasonableness of any variation from the applicable sentencing range. *Jackson*, 408 F.3d at 305.

## III.

For the foregoing reasons, the sentence is **VACATED** and **REMANDED** to the district court for resentencing in accordance with this opinion.