NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0918n.06
Filed: December 20, 2006

Case No. 05-6017

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| MARK E. HOLLAND, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

BEFORE: BOGGS, Chief Judge; BATCHELDER, Circuit Judge; and BELL, District Judge.[*]

ALICE M. BATCHELDER, Circuit Judge. Defendant-Appellant, Mark Holland ("Holland"), appeals the sentence imposed by the district court following his plead of guilty to Count 1 of a federal indictment charging him with conspiracy to manufacture 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Because we conclude that the district court did not err in calculating the applicable advisory Guideline range and the court imposed a reasonable sentence, we affirm.

Holland assigns as error the district court's application of a three-level increase in the base offense level for "substantial risk of harm." The facts material to this claim, as well as to the sentence in general, are stipulated in Holland's plea agreement. At Jason Kyle's residence, Kyle and

_____

[*]The Honorable Robert H. Bell, United States District Judge for the Western District of Michigan, sitting by designation.

Holland assisted each other in manufacturing more than 50 grams of methamphetamine. Both men knew how to make methamphetamine and had cooked it several times at Kyle's home. On November 30, 2004, law enforcement officers set up surveillance at Kyle's home. At approximately 10:00 a.m., Holland drove his pick-up truck into Kyle's driveway, backed into the garage, and closed the door. A few hours later, the officers executed a search warrant at Kyle's home. Kyle, Holland, Charles Trimby, and Kyle's girlfriend were present. Upon executing the search warrant, officers found a large methamphetamine lab set up in the kitchen, methamphetamine sitting on a table in the great room, and a gym bag containing various components used to manufacture methamphetamine stashed in the back seat of Holland's truck. Next to the gym bag was the .44-caliber rifle.

At the sentencing hearing, Officer Bailey testified that Kyle's 5,000-square foot residence sat on "several acres" and was located approximately 80 yards from adjacent houses in a nearby subdivision. The methamphetamine fumes emanating from the house could be smelled 25 yards away, and before performing the search of the premises, the officers had to don their gas masks and have the house ventilated. Officer Bailey testified that the lab in Kyle's kitchen was the largest he had ever seen, with "numerous" gallon-size containers of liquids and chemicals associated with manufacturing methamphetamine. By comparison, Officer Bailey noted that some methamphetamine labs only use quart-size containers.

The presentence report set Holland's base offense level at 26. After adding a two-level firearm enhancement for the lever-action .44-caliber rifle found in Holland's pick-up truck, and a three-level enhancement for the "substantial risk of harm to human life" created by Holland's methamphetamine laboratory, and crediting Holland with a reduction for acceptance of responsibility, the report set Holland's total offense level at 28. The district court sentenced Holland

2

to 88 months in prison, a sentence in the middle of the advisory Sentencing Guideline range of 78 to 97 months.

Holland argues that the nature of the methamphetamine laboratory does not justify the application of the three-level enhancement for substantial risk of harm. With the enhancement, Holland's Sentencing Guideline range was 78 to 97 months, whereas, without the enhancement, the Guideline range would have been 57 to 71 months, but with a mandatory minimum of 60 months. We review *de novo* this mixed question of law and fact. *See United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005).

The "substantial risk of harm" enhancement is not consistently applied in methamphetamine cases even though there is almost always a danger of explosion associated with the production of methamphetamine. In this case, Holland argues that the kitchen laboratory in Kyle's 5,000-square foot home was not close enough to the neighboring houses to present a substantial risk of harm to humans. The house sits on several acres outside of the city limits, and was 200 to 300 feet away from the nearby subdivision.

Pursuant to the Sentencing Guidelines, courts consider four factors in determining "substantial risk of harm":

> (i) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, or the manner in which the chemicals or substances were stored,
>
> (ii) The manner in which hazardous or toxic substances were disposed, or the likelihood of release into the environment of hazardous or toxic substances,
>
> (iii) The duration of the offense or the extent of the manufacturing operation,
>
> (iv) The location of the amphetamine or methamphetamine laboratory (e.g., in a residential neighborhood or remote area), and the number of human lives placed at substantial risk of harm.

U.S.S.G. § 2D1.1. The district court considered each of these factors in ruling on Holland's objection to the enhancement.

Officer Bailey testified that there were "numerous" gallon-size glass jars "full" of chemicals associated with the meth production at Kyle's home – a significant quantity inasmuch as similar labs in Officer Bailey's experience use only quart-size jars. Holland's methamphetamine operation was the largest meth lab that Officer Bailey, an experienced narcotics officer, had seen. The district court considered this testimony and found the quantity in this case to be "out of the ordinary." Addressing the way in which the chemicals were stored, the court noted, "the fact that you could smell the chemicals [away from the house] is some indication of faulty storage procedures." Furthermore, Officer Bailey testified that shortly before officers entered the house, a gallon jug of flammable Coleman fuel had spilled on the stove top. The record supports the district court's finding that the first factor weighed in favor of applying the substantial risk of harm enhancement.

The remaining factors also support the court's application of the enhancement. The court considered the evidence on the waste disposal – the second factor – to be "somewhat equivocal." The court focused on the chemical spill inside the house and the relative meth-making inexperience of the co-conspirators and determined that these factors "increase[d] [the] likelihood of a release into the environment." Regarding the third factor, the duration and extent of the offense, the court noted that Holland's operation was unusually large and had lasted approximately three months – both of which weigh against Holland's objection. Finally, regarding the location of the laboratory, the district court found that the "house was not located in a remote, rural location nor was it located in an apartment complex." The court then considered the inexperience of the offenders, the prior fuel spill, and the burning candle in the kitchen laboratory, and understandably "assume[d] that there was

4

a great potential for an explosion or a fire." The court went on to discuss the likelihood of human harm in the event of such a fire and agreed with Officer Bailey that there was not a substantial risk of other houses catching fire, but that there may have been some additional risk due to the dry, brown grass and leaves surrounding the Kyle home. The court did not believe this was sufficient by itself to support the enhancement, but taking all of the factors into account, "the Court [found] that they predominate in favor of applying the substantial risk of harm in this case."

We do not disagree with the district court's analysis. Although this laboratory was not in a truly rural or suburban area, it was close enough to neighboring homes and streets that local residents could have been harmed by a large laboratory explosion. In light of the laboratory's location, the quantity of the chemicals, the escaping, flammable and toxic fumes, the burning candle in the home, and the conspirators' disregard for the danger created by their activity, we conclude that the "substantial risk of harm" factors support the sentencing enhancement.

At sentencing, Judge Collier noted all of the letters that he had received pleading for leniency and vouching for Holland's good character. The court stated that it considered both the individual and social aspects of Holland's offense, observing that the crime was not merely personal in nature. After considering all of the advisory Sentencing Guideline factors, the court determined that a sentence within the Guideline range was the appropriate sentence "based upon all the facts and circumstances that the Court has found apply to this case as well as [Holland's] unique personal circumstances and . . . background." Significantly, the district court added that it

> also has determined that the sentence the Court is going to impose would be the appropriate sentence even had the Court determined that a different sentencing guideline range applied, or if the Court had granted the objection that you had, or if the Court had determined some other fact or factor that might have determined the guideline range; that is, the Court would have imposed this sentence even if the Court

5

had determined the guideline range was lower or if the Court had determined the guideline range was higher.

Clearly, Judge Collier would have sentenced Holland to 88 months regardless of the three-level enhancement at issue, and any error in applying that enhancement would be harmless. *See United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (if the error alleged "did not affect the district court's selection of the sentence imposed" the court will not vacate and remand) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)).

Furthermore, after reviewing the sentencing proceedings, we conclude that the Guideline sentence was reasonable. Accordingly, we AFFIRM the sentence imposed by the district court.