# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 8, 2009

Charles R. Fulbruge III
Clerk

No. 08-50993

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ERIC NATHAN IVEY

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:06-CR-30

Before JONES, Chief Judge, and GARZA and STEWART, Circuit Judges.

PER CURIAM:[*]

After an explosion at his home, Eric Ivey ("Ivey") pled guilty to attempting to manufacture methamphetamine and was sentenced to 72 months imprisonment. He appeals the imposition of a 15-level sentencing enhancement for creating a substantial risk of harm to human life. Because the district court properly applied the enhancement, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On June 3, 2005, Ivey severely burned himself in an explosion in his home in Waco, Texas, while attempting to manufacture methamphetamine. Witnesses observed Melissa Ivey, who assisted her husband with methamphetamine manufacturing, and two of Ivey's other accomplices[1] fleeing the house. Investigation uncovered that methamphetamine manufacturing caused the explosion, and Ivey was arrested.

In May 2008, Ivey pled guilty to attempting to manufacture methamphetamine in violation of 21 U.S.C. §§ 841, 846. Based on the drug quantity, Ivey's offense level was 12, but the district court applied a sentencing enhancement for creating a substantial risk of harm to human life, which raised the offense level to 27. USSG § 2D1.1(b)(10)(C)(ii). After a two-level reduction for acceptance of responsibility, the guidelines range was 100 to 125 months. The district court treated the guidelines as advisory and imposed a 72-month sentence.

Ivey appeals the 15-level "risk of harm" enhancement, arguing that his actions created a substantial risk of harm only to himself and his accomplices, who were not the intended beneficiaries of the enhancement.

This court reviews a district court's interpretation of the sentencing guidelines *de novo* and its factual findings for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). A mixed question of law and fact, such as the existence of a risk of harm to human life, receives *de novo* review. *United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005). The government bears the burden to prove by a preponderance of the evidence that a sentencing enhancement applies. *United States v. Rodriguez*, 523 F.3d 519,

---

[1] One witness reported seeing an unidentified white male and female flee the house. It is unclear whether this female was Melissa Ivey, but it does not affect this appeal.

The government has made no argument that these unidentified individuals were innocent bystanders, and in his brief, Ivey acknowledges that they were accomplices.

524 (5th Cir. 2008) (citing *United States v. Herrera-Solorzano*, 114 F.3d 48, 50 (5th Cir. 1997)).

The sentencing enhancement applied by the district court directs:

[If] the offense involved the manufacture of amphetamine or methamphetamine and the offense created a substantial risk of harm to (I) human life . . . , increase by 3 levels. If the resulting offense level is less than level 27, increase to level 27.

USSG § 2D1.1(b)(10)(C)(ii). The comments provide additional guidance on its application:

(A) Factors to Consider.—In determining, for purposes of subsection (b)(10)(C)(ii) or (D), whether the offense created a substantial risk of harm to human life or the environment, the court shall include consideration of the following factors:

(i) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored.

(ii) The manner in which hazardous or toxic substances were disposed, and the likelihood of release into the environment of hazardous or toxic substances.

(iii) The duration of the offense, and the extent of the manufacturing operation.

(iv) The location of the laboratory (e.g., whether the laboratory is located in a residential neighborhood or a remote area) and the number of human lives placed at substantial risk of harm.

USSG § 2D1.1 cmt. 20.

It is undisputed that the explosion and fire posed a substantial risk of harm to Melissa Ivey. Ivey argues that "human life" for purposes of the enhancement does not include accomplices—he did not *place* his wife at risk because she voluntarily accepted these dangers by participating in his methamphetamine manufacturing operation. Ivey describes this enhancement as adopted to protect the innocent from the dangers of methamphetamine labs and asserts that participants in the offense should not receive the same

protection. The government responds that the plain language refers to "human life," without excluding co-conspirators.

Ivey's discussion of statutory purpose and Congressional intent cannot overcome the text. Where the Guidelines exempt co-conspirators from risk-of-harm analysis, they do so explicitly. *See* USSG § 2K1.4(a)(2) (". . . if the offense created a substantial risk of death or serious bodily injury to any person other than a participant in the offense . . ."); USSG § 3C1.2 cmt. 4 ("'Another person' includes any person, except a participant in the offense who willingly participated in the flight."). Section 2D1.1 does not restrict its application to non-participants and can thus apply where participants in the manufacturing, such as Melissa Ivey, have been placed at risk.

The Seventh Circuit has included co-conspirators in its § 2D1.1 risk-of-harm analysis:

> First, there were several people at a risk of some type of harm, namely Chamness, the police officers who arrived on the scene, the staff of the laboratory who cleaned up the site, the owner of the trailer who called police, and *Chamness's cohorts, which includes those who fled and those who were apprehended.* We further find these lives were placed at a substantial risk of harm. . . . Given their close proximity within the trailer and their proximity to the actual gassing operation, the individuals were placed at a substantial risk of harm, namely serious injuries from an explosion or a fire.

*United States v. Chamness*, 435 F.3d 724, 729 (7th Cir. 2006) (emphasis added).

This conclusion is consistent with the Second Circuit's decision in *United States v. Thorn*, 317 F.3d 107 (2d Cir. 2003), which analyzed a provision enhancing the sentence for a Clean Air Act violation if the offense resulted in a substantial likelihood of death or serious bodily injury. *Id.* at 117. Like Ivey, the defendant argued that only co-conspirators were endangered. *Id.* at 118. Relying on the absence of a textual exception, the Second Circuit held, "§ 2Q1.2(b)(2) is not limited to situations in which the offense conduct created

a substantial risk of death or serious bodily injury to persons other than participants in the offense." *Id.*

Furthermore, under circumstances very similar to those at hand, defendants have been convicted of endangering human life while illegally manufacturing a controlled substance, 21 U.S.C. § 858: "Whoever, while manufacturing a controlled substance . . . creates a substantial risk of harm to human life shall be fined . . . , or imprisoned not more than 10 years, or both." *See, e.g.*, *United States v. Graham*, 323 F.3d 603, 606 (8th Cir. 2003) (involving a conviction under 21 U.S.C. § 858 following the death of a fellow methamphetamine manufacturer in an explosion).

For the foregoing reasons, we hold that the § 2D1.1(b)(10)(C) enhancement for substantial risk of harm to human life applies where the defendant created a substantial risk of harm to a fellow participant's life. Accordingly, the district court properly applied the enhancement here.

**AFFIRMED.**